IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KERRY ANDERSON, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-0410 |
| | § | |
| COMPASS BANK d/b/a BBVA | § | |
| COMPASS, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This foreclosure case is before the Court on Defendant Compass Bank d/b/a

BBVA Compass's ("Defendant") Motion for Summary Judgment [Doc. # 16], to

which Plaintiffs Kerry and Diane Anderson ("Plaintiffs") filed a Response [Doc.

# 19]. Defendant filed a Reply [Doc. # 21] three weeks after the September 23, 2014

deadline. Also pending is an opposed Motion to Withdraw as Attorney of Record

("Motion to Withdraw") [Doc. # 20] filed by Plaintiffs' attorney on the grounds that

Plaintiffs are not communicating with counsel.[1] Both motions are ripe for review.

---

[1] Defendant did not file a response by the October 7, 2014 deadline or request for additional time to do so. In a letter submitted October 17, 2014, Defendant clarified that it opposed the Motion to Withdraw because "counsel is responsible for the nature of the claims and because permitting withdrawal will likely cause delay." *See* Letter from Defendant dated October 17, 2014 ("Defendant's Oct. 17, 2014 Letter") [Doc. # 22]. Defendant further informed the Court that Plaintiffs were failing to participate in the litigation process by not responding to discovery requests and ignoring the Court's Order [Doc. # 10] to file a status report every sixty days. *Id.* In response to
(continued...)

Having carefully considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court **grants** Defendant's Motion for Summary Judgment and **grants** Plaintiffs' counsel's Motion to Withdraw.

## I.   BACKGROUND

This case stems from a second-lien mortgage that Plaintiffs Kerry and Diane Anderson, husband and wife, took on their home located at 8415 Kelsey Pass, Missouri City, Texas 77459 ("Property").  Plaintiffs' Original Petition ("Petition") [Doc. # 1-6],¶ 4.1.[2]  On or about May 5, 2007, Plaintiff Kerry Anderson executed an Equity Optimizer Credit Agreement and Disclosure ("Note") in favor of Defendant Compass Bank.  *See* Equity Optimizer Credit Agreement and Disclosure ("Note") [Doc. # 16-1], at ECF pages 5-11.  That same day, Plaintiffs executed a Homestead

---

[1]      (...continued)
Defendant's letter, Plaintiffs' counsel, LaToya Jarrett, filed a Memorandum in Support of Motion to Withdraw as Attorney of Record ("Jarrett's Memorandum") [Doc. # 23].

[2]      Plaintiffs' first-lien mortgage was the subject of a separate case and is not at issue here.  *See Anderson, et. al. v. J.P. Morgan Chase*, Civ. No. H-13-1448 (S.D. Tex. 2013) (Harmon, J.).  In April 2013, Plaintiff sued J.P. Morgan Chase, the holder of the first-lien mortgage, in the 400th Judicial District Court of Fort Bend County, Texas, alleging violations of the Texas Property Code, violations of the Texas Finance Code, breach of contract, wrongful foreclosure, and negligence.  *See* "Plaintiff's Original Petition and Application for Temporary Restraining and Injunctive Relief" [Doc. # 1-1 of Civ. Action No. H-13-1448], at ECF pages 9-27.  The case was removed to federal court on May 20, 2013, and the Honorable Melinda Harmon, on January 7, 2014, dismissed all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Order of Dismissal [Doc. # 12 of Civ. Action No. H-13-1448].

Lien Contract and Deed of Trust ("Deed of Trust") establishing a lien on the Property. *See* Homestead Lien Contract and Deed of Trust ("Deed of Trust") [Doc. # 16-1], at ECF pages 13-19.

Plaintiffs claim (but supply no evidence) that they made timely payments in complete compliance with the Deed of Trust and Note from May 2007 to January 2013. Petition, ¶ 4.2; Response, at 1. Defendant, on the other hand, has submitted payment records that reveal Plaintiffs continuously failed to make timely payments on the loan as early as 2007. *See* Exhibit A-5 ("Payment Records") [Docs. # 16-4 through # 16-9]. Defendant also informed the Court that Plaintiff Diane Anderson filed for Chapter 13 bankruptcy protection in January 2011. *See In re Diane Anderson, et. al.*, No. 11-30111-KKB-13 (Bankr. S.D. Tex. 2011). During the bankruptcy proceedings, the parties stipulated that Plaintiffs owed $3,2848.00 in post-petition unpaid installments. Agreed Order Conditioning Automatic Stay (Home) ("Agreed Order") [Docs. # 54 and # 55 of Bankr. Case No. 11-30111-KKB-13]. Diane Anderson's bankruptcy case was dismissed in June 2012 for failure to make payments in compliance with the plan. *See* Motion to Dismiss for Failure to Make Payments [Doc. # 57 of Bankr. Case No. 11-30111-KKB-13].

In a letter dated December 19, 2012, Defendant notified Plaintiffs that they were in "breach of the mortgage" for missed payments due in October, November, and

December 2012, and giving Plaintiffs until January 20, 2013, to pay the full amount due. Letter From BBVA Compass dated Dec. 19, 2012 ("Defendant's Dec. 2012 Letter") [Doc. # 16-3], at ECF pages 4-5. When Plaintiffs subsequently failed to make payments, Defendant sent Plaintiffs a Notice of Default and Intent to Accelerate, followed by a Notice of Acceleration. *See* Notice of Default and Intent to Accelerate [Doc. # 16-1], at ECF pages 22-28; Notice of Acceleration [Doc. # 16-1], at ECF pages 29-35.

On June 17, 2013, Defendant initiated foreclosure proceedings against the Property in the 400th Judicial District Court of Fort Bend County, Texas, alleging that Plaintiffs had failed to make eight scheduled payments and that the Note had been in default since October 16, 2012. *See* Application for Court Order Allowing Foreclosure of a Lien Securing a Home Equity Loan Under Texas Constitution Article XVI, Section 50(a)(b) ("Application for Foreclosure") [Doc. # 16-2], at ECF pages 2-5. Defendant's foreclosure suit was abated when Plaintiffs filed this case on August 9, 2013 in the 400th Judicial District Court of Fort Bend County, Texas, suing Defendant for breach of contract, negligence, violating HUD regulations and, violating the Texas Debt Collection Practices Act. *See generally* Petition. Defendant timely removed this case on the basis of diversity jurisdiction. *See* Notice of Removal [Doc. # 1]. On May 15, 2014, Defendant filed an answer raising affirmative defenses

and asserting counterclaims against Plaintiffs for (1) an order authorizing judicial foreclosure and (2) attorneys fees. *See* Defendant Compass Bank's Amended Answer ("Amended Answer") [Doc. # 15].

According to both Plaintiffs' and Defendant's counsel, Plaintiffs have been unresponsive and have failed to participate in the litigation process.

On August 8, 2014, Defendant filed a motion seeking summary judgment on all of Plaintiffs' claims. While Defendant's motion did not reference its counterclaims, Defendant requested an order authorizing foreclosure and attorneys fees. On September 16, 2014, Plaintiffs' counsel filed a motion to withdraw and a subsequent memorandum in support [Docs. # 20 and # 23].

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to her case and on which she will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). The moving party, however, "need not negate the elements of the nonmovant's case." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013). "A dispute as to a material fact is genuine if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, No. 13-30802, 2014 WL 4693789, at *5 (5th Cir. Sept. 22, 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.

*Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (internal citations and quotations omitted); *Williams v. Valenti*, 432 F. App'x 298, 302 (5th Cir. 2011).

## III.    SUMMARY JUDGMENT ANALYSIS

### A.    Breach of Contract

Plaintiffs sue Defendant for breach of contract, alleging that Defendant failed

to comply with the terms and conditions of the Deed of Trust and Note.  Petition,

¶¶ 5.2-5.6.  Plaintiffs appear to assert four separate breach of contract theories.  First,

Plaintiffs assert that Defendant failed to "acknowledge and respond to [Plaintiffs']

request for an accounting of their loan history."  *Id.*, ¶ 5.3.  Second, Defendant

allegedly "denied [Plaintiffs] their legal and statutory rights to confirm the validation

of their debt with Defendants."  *Id.*, ¶ 5.4.  Third, Defendant allegedly "wrongfully

appl[ied] these charges over and above Plaintiffs' principal loan balance," and

Plaintiffs "have incurred additional charges to their loan balance and escrow account

and are continuing to incur them to the present date."  *Id.*, ¶¶ 5.5-5.6.  Fourth,

Plaintiffs claim that Defendant failed to comply with HUD regulations, 24 C.F.R.

§§ 203.604(e), 203.605, and 203.501, and the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. § 2605(e), which allegedly were incorporated into the Deed

of Trust.  *Id.*, ¶¶ 4.5, 5.4.[3]

### 1.    Plaintiffs' Failure to Perform the Contract

Under Texas law, to prevail on a breach of contract claim a plaintiff must show:

(1) the existence of a valid contract; (2) performance or tendered performance by the

---

[3]    Plaintiffs also make several allegations with regards to an "escrow account." *E.g.*,
Petition, ¶ 5.6.  However, Plaintiffs did not have an escrow account.  *See* Exhibit A
("Affidavit of Rhonda Nesbitt") [Doc. #16-1], at ECF page 2, ¶ 2.  Thus, there can be
no dispute as to any material fact related to any of Plaintiffs' allegations regarding
their "escrow account."

plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.–Houston [14th Dist.] 2005, pet. denied)). If one party to a contract commits a material breach, "there is no obligation for the non-breaching party to continue performance." *U.S.* ex rel. *Wallace v. Flintco Inc.*, 143 F.3d 955, 968 (5th Cir. 1998) (citations omitted); *accord Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 470 (5th Cir. 2004); *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994).

Plaintiffs have failed to demonstrate a genuine issue of material fact regarding the second element of their claim, Plaintiffs' performance or tendered performance. The undisputed evidence establishes that Plaintiffs breached the Deed of Trust and Note by failing to make payments.[4] Because Plaintiffs were in default of the contract terms, they cannot maintain a suit for breach of that contract. *See Eby*, 369 F.3d at 470; *Wallace*, 143 F.3d at 968. Accordingly, there is no genuine issue of material fact

---

[4]     Defendant's letter dated December 19, 2012, which Plaintiffs do not dispute or seek to discredit, states that Plaintiffs did not make payments in October, November, and December 2012. *See* Defendant's Dec. 2012 Letter. In the related bankruptcy proceedings, the parties stipulated that Plaintiffs did not make payments on the Note for an extended period of time post-petition. *See* Agreed Order. Defendant submits payment records, which Plaintiffs do not dispute or attempt to discredit, showing that Plaintiffs failed to make timely payments as early as 2007. *See* Payment Records. Finally, in addition, Plaintiffs concede that they did not make payments after January 2013. *See* Petition, ¶¶ 4.2-4.3.

that Plaintiffs cannot prove one of the elements of their breach of contract claim, and all theories on that claim are dismissed.

## 2. Violations of HUD Regulations and RESPA

Plaintiffs further allege that Defendant breached the Deed of Trust by failing to comply with 24 C.F.R. §§ 203.604(e), 203.605, and 203.501 before accelerating the note and foreclosing on the Property. Petition, ¶ 5.4. The Fifth Circuit has recognized that "Federal statutes and regulations can form the basis of a breach-of-contract claim if the parties expressly incorporate them into their contract." *Smith v. JPMorgan Chase Bank, N.A.*, 519 F. App'x 861, 864 (5th Cir. 2013); *see also Bates v. JPMorgan Chase Bank, NA*, No. 13-15340, 2014 WL 4815564, at *3 (11th Cir. Sept. 30, 2014); *Baker v. Countrywide Home Loans, Inc.*, Civ. Action No. 3:08-CV-0916-B, 2009 WL 1810336, at *5 (E.D. Tex. June 24, 2009) (Boyle, J.); *Squire v. Va. Hous. Dev. Auth.*, 758 S.E.2d 55, 60 (Va. 2014).

Plaintiffs argue that the Deed of Trust incorporated the HUD regulations through the provision stating that it "shall be governed by federal law of the jurisdiction where the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." *See* Response, at 4-5. However, this general provision does not expressly incorporate the HUD regulations. *Compare Smith*, 519 F. App'x at 864 ("The only

provision in the deed of trust that references federal law does so in general terms, noting that the deed 'shall be governed by federal law and the law of the jurisdiction in which the Property is located.' Therefore, the Smiths cannot base their claim for breach of contract on RESPA."), *with Baker*, 2009 WL 1810336, at *5 (providing an example of when HUD regulations were explicitly incorporated into a mortgage contract: "In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations."). The general reference to "federal laws" in the Deed of Trust, on which Plaintiffs rely, is insufficient to support their breach of contract claim.

Plaintiffs have not directed the Court to any other evidence in the record or argued special circumstances that would suggest that the parties intended to incorporate HUD regulations into the contract. Plaintiffs, therefore, cannot maintain a breach of contract claim for violations of HUD regulations.[5]

---

[5]    To the extent Plaintiffs have attempted to assert a claim for violations of HUD regulations separate and apart from a breach of contract claim, such a claim also fails as a matter of law to present any cognizable claim. "[T]he regulations promulgated under the National Housing Act govern relations between the mortgagee and the government, and give the mortgagor no claim for duty owed or for the mortgagee's failure to follow said regulations." *Mitchell v. Chase Home Fin. LLC*, 2008 WL 623395, at *3 (N.D. Tex. Mar. 4, 2008) (Kinkeade, J.); *see Moses v. Banco Mortg. Co.*, 778 F.2d 267, 271 (5th Cir. 1985) ("[N]either the Federal Housing Act nor the HUD regulation was intended directly to benefit . . . owners of low income housing
(continued...)

Similarly, Plaintiffs' allegations that Defendant violated RESPA, specifically 12 U.S.C. § 2601, fail to raise a genuine dispute as to a material fact because RESPA was not explicitly incorporated into the contract.[6] Furthermore, the crux of Plaintiffs' claims that Defendant violated RESPA appears to be Defendant's alleged failure to reply to Plaintiffs' "Qualified Written Request," sent August 9, 2013. Under 12 U.S.C. § 2605(e), mortgage loan servicers are given thirty days to provide a written response to qualified written requests from the borrower related to the servicing of the loan. Even assuming Plaintiffs' letter sent on August 9, 2013 met the requirements of a qualified written request and Plaintiffs could bring a claim under RESPA, Defendant would be entitled to judgment as a matter of law because it is undisputed that Defendant responded to Plaintiffs' request on August 28, 2013, within the thirty day deadline. *See* Exhibit A-6 ("Defendant's Response to QWR") [Doc. # 16-10], at

---

[5]     (...continued)
. . . ."); *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360, 362 (5th Cir. 1977) (holding that neither Congress nor HUD intended for the HUD Handbook to create a private cause of action); *Bates*, 2014 WL 4815564, at *3 (listing cases from other circuits that did not recognize a private cause of action existed independent from a breach of contract claim).

[6]     Although Plaintiffs' Petition only alleged a violation of 12 U.S.C. § 2601(e), Plaintiffs' response claims violations of §§ 2601-2617. *See* Response, at 4. Plaintiffs do not cite to any authority or evidence in the record to establish the relevance of any of this wide range of RESPA provisions. In any event, Plaintiffs cannot maintain any claim for violation of RESPA because the statute was not explicitly incorporated into the Deed of Trust or Note.

ECF page 2.[7]  Plaintiffs fail to raise a genuine question of material fact on their RESPA claim, and Defendant is entitled to judgment as a matter of law.

## C.  <u>Negligence</u>

Plaintiffs allege that Defendant negligently breached its duties to Plaintiffs (1) to manage the loan and "escrow account," (2) to comply with notice provisions contained in the Deed of Trust before accelerating the Note and foreclosing on the Property, (3) to protect Plaintiffs' rights, and (4) to not mislead Plaintiffs when they applied for a loan modification.  Petition, ¶ 5.7.  With regards to damages, Plaintiffs' Petition only alleges that "Plaintiff[s] sustained pecuniary losses that were proximately caused by Defendant's conduct."  Petition, ¶ 6.1.

---

[7]    Plaintiffs' Response raises two new allegations.  Even if these issues were properly alleged and before the Court, which they are not, Defendant would be entitled to summary judgment on these issues as well.  First, Plaintiffs' Response claims that Defendant failed to "provide disclosure complaint resolution" in violation of 24 C.F.R. § 3500.21.  Response, at 4.  Section 3500.21 does not apply to subordinate liens, and thus is inapplicable here.  *See* 24 C.F.R. § 3500.21(a).  Second, Plaintiffs' Response states that Plaintiffs "did everything they were required to do to secure the HAMP [Home Affordable Modification Program] modification, but Defendant suddenly, unilaterally stopped responding to inquiries or discussing the status of Plaintiffs' loan modification."  Response, at 5.  The Second Lien Modification Program under HAMP would only be available if a homeowner's first mortgage was permanently modified under HAMP.  *See* Eligibility for Second Lien Modification Program (2MP), http://www.makinghomeaffordable.gov/programs/lower-payments/Pages/lien_modification.aspx (last updated July 8, 2014).  No evidence in the record supports the notion that Plaintiffs successfully secured a HAMP modification on the first mortgage.  In fact, the first-lien holder successfully dismissed Plaintiffs' earlier case filed in federal court to prevent foreclosure.  *See Anderson*, Civ. Action No. H-13-1448.  Accordingly, Plaintiffs cannot state a claim for violation of the HAMP or the 2MP.

"'Under Texas law, the elements of a negligence claim are (1) a legal duty on the part of the defendant; (2) breach of that duty; and (3) damages proximately resulting from that breach.'" *Lane v. Haliburton*, 529 F.3d 548, 565 (5th Cir. 2008) (quoting *Sport Supply Grp., Inc. v. Columb. Cas. Co.*, 335 F.3d 453, 466 (5th Cir.2003)). "[T]he economic loss rule precludes recovery of economic losses in negligence when the loss is the subject matter of a contract between the parties." *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 285 (Tex. App.–Houston [14th Dist.] 2000, no pet.) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).

Plaintiffs agree that the economic loss rule "prevents breach of contract claims from being recast into tort claims." Response, at 6. But, in an attempt to circumvent this rule, Plaintiffs argue that their "injuries include violation of statutory rights (i.e. [sic] HUD, RESPA), and loss of use and control of [P]roperty, much more than only economic loss." *Id.* Even assuming that Plaintiffs could seek these additional damages when the Petition only asserts damages of "pecuniary losses," the Court concludes that the economic loss rule bars Plaintiffs' recovery. First, for the reasons explained above, Plaintiffs have failed to assert viable claims for violations of HUD regulations or RESPA, and thus cannot obtain damages for injuries on that basis.

Second, any injuries Plaintiffs allegedly suffered due to "loss of use and control of the [P]roperty," are substantively injuries tied to Plaintiffs' ownership of the Property, and thus are considered injuries related to the subject of the contract with Defendant. *See Auriti v. Wells Fargo Bank. N.A.*, Civ. Action No. 3:12-CV-334, 2013 WL 2417832, at \*6 (S.D. Tex. June 3, 2013) (Costa, J.) ("Certainly, some of the damage [Plaintiff] alleges she suffered . . . affected the subject of the note and deed of trust, that is, the debt she owed Defendants on the note and her ownership of the Property."); *Roberts v. Fed. Home Loan Corp.*, Civ. Action No. H-11-3304, 2013 WL 1345222, at \*6 (S.D. Tex. Mar. 30, 2013) (Rosenthal, J.) ("In this case, the injuries that the plaintiffs allege, such as loss of title, are barred by the economic loss rule because they are the subject of the mortgage contract . . . ."). Therefore, summary judgment is granted in Defendant's favor on all Plaintiffs' negligence claims because Plaintiffs have not alleged economic loss beyond the subject of the contract. *See Delaney*, 809 S.W.2d at 494.[8]

### D.    Texas Debt Collection Practices Act ("TDCPA")

Plaintiffs allege that "Defendant has not responded to Plaintiffs['] disputes

---

[8]    Plaintiffs assert that the economic loss rule "preclude[s] tort claims between parties who are not in contractual privity," and then conclude that Plaintiffs'"recovery is not barred and the economic loss rule does not apply in this case." Response, at 6. Plaintiffs fail to articulate why the economic loss rule's inapplicability to entities not in contractual privity should apply here. Plaintiffs indisputably are in contractual privity with Defendant.

about discrepancies regarding their mortgage debt (i.e. [sic] escrow account history) pursuant to the Texas Debt Collection Practices Act." Petition, ¶ 4.6. Plaintiffs do not allege any specific violations of the TDCPA or provide any pertinent evidence. Indeed, Plaintiffs appear to have abandoned this allegation in their Response. Defendant is entitled to judgment as a matter of law on their TDCPA claim.[9]

### E.     Defendant's Counterclaim for an Order Authorizing Foreclosure

Defendant's Motion for Summary Judgment states "Compass Bank is entitled to a judgment authorizing a foreclosure sale to be conducted under the terms of the Deed of Trust, Texas Property Code § 51.002 and applicable law." Motion for Summary Judgment, at 14. Defendant's motion fails to mention that Defendant filed a counterclaim for an order authorizing judicial foreclosure. Defendant's counterclaim clarifies that Defendant seeks an order pursuant to Texas Rule of Civil Procedure 735(2). *See* Amended Answer, at 6. The Court interprets Defendant's request in the Motion for Summary Judgment as a request for summary judgment on its counterclaim for an order authorizing judicial foreclosure.

The Texas Constitution protects homestead properties by requiring that a home equity loan "secured by a lien may be foreclosed upon only by a court order." TEX.

---

[9]     To the extent the alleged violation of the TDCPA relates to Plaintiffs' "escrow account," Defendant would be entitled to summary judgment because Plaintiffs do not now have–and never had–an escrow account. *See supra*, note 3.

CONST. art. XVI, § 50(a)(6)(D); *accord Patton v. Poterfield*, 411 S.W.3d 147, 157 (Tex. App.–Dallas 2013, pet. denied). Under Texas Rule of Civil Procedure 735(2), a party seeking to foreclose a lien created by a home equity loan may do so by filing "a suit or counterclaim seeking a final judgment which includes an order allowing foreclosure under the security instrument and Texas Property Code § 51.002."

Defendant has provided undisputed summary judgment evidence that: (1) Plaintiffs obtained a home equity loan from Defendant granting Defendant a security interest in the Property; (2) Plaintiffs are in default of the loan for failure to make payments; (3) Defendant gave Plaintiffs notice of default and intent to accelerate; (4) Defendant provided Plaintiffs notice of acceleration; and (5) the terms of the Deed of Trust give Defendant the right to foreclose on the Property under these circumstances. *See* Note; Deed of Trust; Account Summary for Period May 16, 2013 to June 15, 2013 [Doc. # 16-9], at ECF page 26; Defendant's Dec. 2012 Letter; Notice of Default and Intent to Accelerate; Notice of Acceleration; Deed of Trust, at ECF page 16 ("Rights and Remedies on Default"). Based on this evidence, the Court concludes that Defendant is entitled to an order authorizing it to foreclose on the Property in accordance with Texas Property Code § 51.002 and all applicable Texas laws. *See Thomas v. Ocwen Loan Servicing, LLC*, Civ. Action No. 3:12-CV-447-L, 2013 WL 30653, at *5 (N.D. Tex. Jan. 3, 2013) (Lindsay, J.); *Maluski v. U.S. Bank,*

*N.A.*, Civ. Action No. H-07-0055, 2008 WL 5102013, at *7 (S.D. Tex. Dec. 1, 2008) (Werlein, J.); *cf.* TEX. R. CIV. P. 736 (providing the requirements for filing an application for expedited foreclosure, an alternative method under Rule 735 to obtain a court order and foreclose a lien created by a home equity loan).

## IV.    DEFENDANT'S REQUEST FOR ATTORNEYS FEES

Defendant seeks recovery of its attorneys fees and costs in defending this suit and pursuing its counterclaims.  Motion for Summary Judgment, at 15.[10]  Page 5 of the Deed of Trust provides for the award of attorneys fees and expenses: "If Lender [Defendant] institutes any suit or action to enforce any of the terms of this Homestead Lien Contract [Deed of Trust], Lender shall be entitled to recover such sum as the court may adjudge reasonable as Lender's attorneys' fees at trial and upon any appeal."  *See* Deed of Trust, at ECF page 17.  Plaintiffs do not dispute the validity or applicability of this provision.  *See generally* Response.  The Court concludes that Defendant is entitled to recover attorneys fees and expenses under the Deed of Trust.

Attorneys fee requests in the Fifth Circuit are governed by the "lodestar" analysis.  *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996).  Texas law

---

[10]    Although not mentioned in Defendant's Motion for Summary Judgment, Defendant also filed a "counterclaim for attorneys fees." *See* Amended Answer, at 7. The Court considers the request for attorneys fees in the Motion for Summary Judgment to be comparable to the request for attorneys fees in the counterclaim.

employs a virtually identical analysis to that used by the federal courts. *See Land Rover U.K., Ltd. v. Hinojosa*, 210 S.W.3d 604, 607 (Tex. 2006). The lodestar is the product of the number of hours reasonably expended on the litigation by the movant's attorneys and each attorney's reasonable hourly billing rate. *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000); *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996). The movant bears the burden of documenting the hours expended and rates charged. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In determining a reasonable fee award, the district court is to consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*[11]

In support of its request for attorneys fees, Defendant only submitted a two-page Affidavit from Aaron E. Homer, one of its attorneys. *See* Exhibit D ("Homer Affidavit") [Doc. # 16-13], at ECF page 2. Homer states that his hourly rate is $210.00 and the hourly rate for a paralegal in his firm is $110.00. The Affidavit includes the following paragraph:

---

[11]     The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of the issues; (3) required skill; (4) whether other employment is precluded; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the attorneys' experience, reputation and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974). *See Mid-Continent*, 205 F.3d at 231; *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir.1998).

I, or another attorney or paralegal with my firm, have performed reasonable and necessary legal services on behalf of Compass Bank. Specifically, I have reviewed and analyzed the claims being made in this lawsuit as well as the state court action granting foreclosure. I, or another attorney or paralegal with my firm, reviewed the underlying issues and drafted Compass Bank's Original Answer in state court, Compass Bank's Notice of Removal, Compass Bank's First Amended Answer and Counterclaim, the Joint Discovery and Case Management Plan, Initial Disclosure Responses, Requests for Admissions, Requests for Production, and Interrogatories, Compass Bank's Certificate of Interested Parties, this Motion for Summary Judgment and supporting affidavits, and attended the initial pre-trial conference. I have reviewed and analyzed various loan documents related to this matter. I have spent additional amounts of time communicating with opposing counsel and with my clients during the course of my representation.

*Id.* Without providing any further details, the Affidavit states that the firm spent 117 hours "in performing reasonable and necessary legal services dedicated to the defense and affirmative claims in the present suit." *Id.*, at ECF page 3.[12] Without providing any information on how this amount was calculated, Homer avers that "Plaintiff [sic] has incurred at least the additional amount of $21,909.58 as reasonable and necessary attorneys' fees, costs, and expenses." *Id.*

The Court must engage in an independent review of the reasonableness and necessity of the requested fees and expenses. The explanation by Defendant's counsel

---

[12]     The Affidavit further states, "If I have to attend a hearing on this motion or draft a reply brief, I will spend another fifteen (3) [sic] hours preparing for and attending the hearing." Homer Affidavit, at ECF page 3. The Court acknowledges that Defendant did file a Reply to the Motion for Summary Judgment. However, the Reply was filed over three weeks after the deadline.

is grossly insufficient to meet the requirements for attorneys fees. Therefore, Defendant's fee request is denied.

Defendant has not submitted any evidence of expenses incurred in this case. Thus, the Court declines to award recovery of expenses at this time. Defendant may submit a Bill of Costs and recover taxable costs in accordance with Federal Rule of Civil Procedure 54.

## VI.    MOTION TO WITHDRAW

### A.    Legal Standard

In the Fifth Circuit, "[a]n attorney may withdraw from representation only upon leave of the court and a showing of good cause and reasonable notice to the client. The withdrawal of an attorney in a given case is a matter entrusted to the sound discretion of the court . . . ." *Williams v. Huntington Ingalls, Inc.*, 488 F. App'x 864, 866 (5th Cir. 2012) (quoting *Matter of Wynn*, 889 F.2d 644, 646 (5th Cir. 1988) (alteration in original)).

### B.    Analysis

Plaintiffs' counsel, LaToya Jarrett, claims that good cause exists for her to withdraw from this case because Plaintiffs have refused to respond to any of her attempts to contact them for a substantial period of time. *See* Motion to Withdraw, at 1; Jarrett's Memorandum, at 1. In support, Jarrett submits: (1) print outs of four

emails to "Diane Davis" (which apparently is the email address for Diane Anderson) from April, May, September, and October 2014; (2) an unclaimed letter to Plaintiffs dated August 29, 2014 stating that Jarrett's office has been unable to contact Plaintiffs despite several attempts, and (3) a call log showing that Jarrett attempted to call Plaintiffs in April, May, July, August, and September 2014 but did not reach Plaintiffs and was unable to leave a voicemail. *See* Exhibits to Jarrett's Memorandum [Docs. # 23-1, # 23-2, and # 23-3].[13]

The Court finds that Plaintiffs' failure to respond to counsel constitutes good cause for counsel to withdraw. On several occasions, counsel attempted to notify Plaintiffs of counsel's desire to withdraw. *See* Exhibit B ("Unclaimed Letter") [Doc. # 23-2], at ECF page 3 ("[W]e need to hear from you **on or by September 5th, 2014 by 12:00 p.m.** or we are withdrawing from all legal representation on any and all cases in which we are your attorneys of record." (emphasis in original)); Exhibit A ("Emails") [Doc. # 23-1], at ECF page 3 ("Due to lack of correspondence from you, Shackleford & Associates, LLC is withdrawing representation from your case against Compass Bank and will notify the Court as such"). These communications sought

---

[13]     Defendant opposes Jarrett's withdrawal "because permitting withdrawal will likely cause delay." Defendant's Oct. 17, 2014 Letter, at 2. Defendant elaborates that it may be seeking discovery and sanctions against Plaintiffs or counsel. *See id.* These concerns are no longer relevant.

responses from Plaintiffs, which Plaintiffs declined to provide.  Plaintiffs' repeated refusals to respond and to participate in discovery support counsel's Motion to Withdraw.  The Motion to Withdraw is granted.

## VII.   <u>CONCLUSION AND ORDERS</u>

For the foregoing reasons, it is hereby

**ORDERED**  that Defendant's Motion for Summary Judgment [Doc. # 16] is **GRANTED**.  All of Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.  It is further

**ORDERED**  that Defendant's request for attorneys fees and expenses is **DENIED**.  It is further

**ORDERED** that Defendant, pursuant to the Homestead Lien Contract and Deed of Trust ("Deed of Trust") [Doc. # 16-1], at ECF pages 13-19, is authorized to foreclose on the property located at 8415 Kelsey Pass, Missouri City, Texas 77459, subject to giving notice and complying with the provisions of Texas Property Code § 51.002 and all applicable Texas laws.  Finally, it is

**ORDERED** that Plaintiffs' counsel's Motion to Withdraw as Attorney of Record [Doc. # 20] is **GRANTED**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **28**th day of **October, 2014**.

Nancy F. Atlas
United States District Judge